with the attorneys who are going to make a presentation this afternoon, please step to the podium, state your name and the party you represent. Your honors, my name is Patrick Cassidy, I represent the appellant Luis Fernandez. Good afternoon, your honors, Assistant State's Attorney Alan Spellberg representing the people, and I'd just like to thank the court for its indulgence. Is this the guy that's making us work in the PM? Yes, your honor. That's against all, everything we believe in. Well, you're the right lawyers, it's the right issue, and besides, it's not like you were going to Six Flags or something in the morning. You might start waving. All right, you've reserved 30 minutes for this case. That's an aspiration, not a deadline. We ask you to keep that in mind. The time will be divided equally. The appellant may reserve a few minutes for rebuttal. And you may begin when you're ready. Thank you. May it please the court, counsel, again, my name is Patrick Cassidy. I represent Luis Fernandez, and I'd like to reserve three minutes for rebuttal, if I may. Your honors, we have two issues before this court in our briefs, but today I'd like to focus on the issue in the supplemental briefs, which I believe is the narrower issue, the more straightforward way of getting Mr. Fernandez the relief he seeks, which is to have his natural life sentence vacated and to be sentenced to a term of years. Reading the briefs, the supplemental briefs, it seems clear to me that the parties agree that Mr. Fernandez's prior federal conviction was not for an offense with, quote, the same elements as an offense classified in Illinois as a Class X felony. The federal offense of possession with intent to distribute is much broader than the Class X felony in Illinois. It reaches possession of any amount of any type of controlled substance from one gram to thousands of grams. Whereas in Illinois, to be a Class X felony, the statute is much narrower. There has to be, in addition to possession of a controlled substance, and in addition to the intent to distribute, there has to be possession of a particular amount and type of substance. So, for instance, if it's amphetamines that the defendant is alleged to have possessed, the state needs to prove that he had at least 200 grams of amphetamines with the intent to distribute. If it's heroin, the threshold is 15 grams. Now, these elements, drug type and quantity, that are present in the Class X felony of Illinois are not present in the federal offense. And so when we just compare the elements, as the statute tells us, we see that they don't have the same elements. And we think that's enough just to end this case. But talk about Kennedy. Your Honor, Kennedy, so the state disagrees, obviously, with our position. They cite people to be Kennedy and a couple other cases. I look at Kennedy that's from this Court, and I look at King as doing exactly what we're asking this Court to do, focusing on the elements. This is what People v. King said, and it cited Kennedy for this proposition. It is not the name given to the prior offense which qualifies them as one of the two predicate felonies. Rather, it is whether the offense contains the same elements as an offense now classified in Illinois as a Class X felony. So I think Kennedy and King support our position, as well as the plain language of the statute. What about the third case they cite, Terry? Terry is clear. They reiterate, I think, the same elements language. I think the state points out that maybe they seem to look to be underlying facts a little more or somewhat, whereas Kennedy and King don't. I would say, well, Terry can't be squared with the language. Another thing about Terry, actually about all three of these cases, these were all rape cases. The prior conviction was rape. Illinois changed the definition of rape. They used different nomenclature. And so there was a saving clause, Terry recognizes this, that all these changes in nomenclature weren't intended to change the substance of the elements. So I think that serves to distinguish Terry. It was looking at circumstances much different than what we have here. Kennedy does talk about offenses that would be equivalent to felonies presently categorized as Class X felonies. And under your reading of Kennedy, no federal drug offense, regardless of whether it's uncontested that the type and the amount would be a Class X felony if tried in Illinois, could ever be the predicate for this offense. Yes, Your Honor. And that's basically what the comp said, the U.S. Supreme Court case we rely on, about the California burglary conviction. In fact, we think it's exactly what the same issue is. In California, they defined burglary very broadly. You didn't have to break and enter. You could just enter and then later shoplift or something. But for federal purposes, the prior burglary conviction had to be the classic generic breaking and entering. So what happened in DeKalb was the Ninth Circuit said, true, these don't have the same elements. California is broader. But the conduct that the defendant, Mr. DeKalb, committed was the same as a generic burglary federal offense. It was a plea case just like this one is. And they looked at the proceedings and said, look, Mr. DeKalb admitted to breaking and entering. And so it's the same conduct. We're going to allow that prior conviction to be used. And that's the reasoning I think that the State's making here. And that's the reason that was rejected by the U.S. Supreme Court when it got to them for review. They chastised the court, the Ninth Circuit, for taking an elements-based inquiry and making it an evidence-based inquiry. They said it's error to authorize a sentence in court to look beyond, to discern what a trial showed or a plea proceeding revealed about the defendant's underlying conduct. And that was error because, according to the court, there's the constitutional rub the Sixth Amendment requires that the jury finds those things. So under DeKalb, it's clear that the underlying facts of prior conviction are irrelevant. The court concluded in DeKalb, whether DeKalb did break and enter makes no difference. Whether he ever admitted to breaking and entering is irrelevant. So we think DeKalb forecloses the State's argument here. We also, though, again, primarily rely on the language that the legislature used in the habitual criminal provision. They said same elements. They could have, but they didn't say same conduct or similar conduct. And we think that shows. I think Tom and Taylor did concern federal enhancement provisions, which is distinguishable, maybe not in a difference circumstance, but it's distinguishable from what you're asking us to apply it to here. Certainly, they were, it was the Armed Career Criminal Act, so the federal enhanced sentencing statute. Here we have the enhanced sentencing statute under State law. But I think the reasoning applies that if we authorize, if we interpret this statute, notwithstanding the word same elements, to allow evaluation of prior and underlying conduct, we're going to come up against the same constitutional rub that the Supreme Court was trying to avoid in DeKalb. And I don't think there's any reason to interpret, to go against the plain language and create a Sixth Amendment, at least tension with the Sixth Amendment, if not an outright violation, when we don't need to. The language is clear. The defendant here, under that language, wasn't eligible for a natural life sentence. And I think it is noteworthy that the language here, even though it predates the modern Sixth Amendment jurisprudence, the legislature got it exactly right. It's perfectly harmonious with DeKalb. So I just don't see, the State hasn't, to my mind, shown why we should depart from that language and that harmony and upset that accord. So, again, because he wasn't eligible, because the prior conviction did not trigger, and there are no other prior convictions that can be substituted here. What about forfeiture? Forfeiture, Your Honor. Well, P. B. Brown speaks of forfeiture. And I think Brown says that if we can see from the record that it wasn't eligible, then there's no forfeiture. If we can't see from the record, then you have to do a PC. Here, I think we can see from the record. The record shows what he was convicted of in the Federal prior conviction. It's even a stipulation, isn't it? Well, a stipulation, too, that he was convicted of it. But also as to the elements, right? The elements, and there's only two elements. Right.  Exactly. They're not equivalent. No, but, I mean, to the element that would have supported this as a class act. Well, DeKalb answers that, Your Honor. When a defendant pleads guilty, he wins his right to a jury determination if only that offense is elements. So if the Federal, if you agree with me that the Federal offense only has two elements and they don't have the drug typing quantity, then he's not stipulated to anything beyond the elements. So for those reasons, we would ask, and again, Mr. Fernandez is not seeking to walk out of prison here. We're talking about a 15- to 60-year prison sentence under our view as a super class act. So, and we think that's more than appropriate and consistent with the law. Thank you, Your Honor. There's no further questions. Mr. Spellberg. Thank you again. Starting off with forfeiture, as you asked about, Justice Epstein. The law is very clear. Under the Habitual Criminal Act, under People v. Brown from the Illinois Supreme Court, a failure to challenge, a failure to object to an eligibility to be sentenced as a habitual criminal forfeits the issue on appeal. It is statutorily mandated forfeiture. The Illinois Supreme Court in Brown specifically said if the defendant fails to challenge in any way the eligibility for habitual criminal, he cannot do it for the first time on appeal. That's precisely what's happening here. The evidence was stipulated to below. It was undisputed even before trial that he was facing a natural life sentence based upon his background. It was with full understanding that he went to trial, that he went to sentencing, and that he'd be facing a natural life sentence. This is forfeited, both statutorily and then also in the more general forfeiture of failure to object, failure to include it in the post-trial motion. There's no way around that. If he wants to raise his claim that he is not eligible, the proper remedy, according to Brown, is through the Post-Conviction Hearing Act, not here on the direct appeal. And I would add just in further instance, this claim wasn't even raised in the original brief that the defendant had filed. It was raised in the supplemental brief after we had filed our response brief at the same time they filed the reply brief. Again, just showing a further instance of forfeiture. But even beyond that, what counsel is asking you to do now is to ignore 30 years of statutory construction under the Habitual Criminal Act. The cases of King, Taylor, Tyler, and Kennedy, Terry, excuse me, King, Terry, and Kennedy all establish what the statute means. The statute's been amended numerous times by the legislature, and they've never once undermined or undone those holdings. And so there's clearly an understanding that when the statute says same elements, that the King analysis, the Terry analysis, the Kennedy analysis allows the court to look at the circumstances of those convictions. I understand what DeKalb says. I understand what Shepard says. But those, as you pointed out, Your Honor, are statutory construction cases by the U.S. Supreme Court regarding a federal statute. Yes, they said they had to reach that construction in order to avoid a, what they perceived as a potential constitutional issue. But importantly, it was a statutory construction. It is not binding on this Court. If we were talking in the absence of any precedent, defendant's argument might make sense. But we're not. We're talking about 30 years of settled construction of the statute. And so, therefore, there's no reason to ignore it. And what we have here is we have a judge properly following that precedent, finding that this offense met the statute, properly imposing a sentence of natural life, an uncontested sentence of natural life. Proportionality argument. The proportionality argument? You know, I would point to the U.S. Supreme Court's decision in Homelin that we cite in our brief. Homelin obviously involved a defendant in Michigan who, for his very first offense, not even a recidivist for the distribution of cannabis, was facing a natural life sentence. That was an Eighth Amendment claim? Yes. And there's authority, isn't there, to the fact that the Eighth Amendment doesn't have as far-reaching an impact as what our constitutional provision on proportionality does in Illinois? Your Honor, I'm not sure I would agree with that statement. Certainly, Clemens says that the proportionate penalty clause of the Illinois Constitution is not synonymous with the Eighth Amendment. But the Court doesn't necessarily say that it goes farther. It just reaches different conduct, or it applies a different test. The most recent disproportionate penalty case we have regarding an individualized sentence would be the People v. Miller decision, which involved the convergence of a juvenile defendant who's automatically transferred, is convicted under an accountability basis of a multiple murder, and faces an automatic natural life sentence. And in that case, the Illinois Supreme Court said that the absence of individualized sentencing, based on the convergence of those three factors, those three statutes, required. And you would, in your interpretation at this point, limit the reach to those circumstances. But certainly some of the rationale in Miller is applicable when there is really no opportunity for a rehabilitation of someone who has not committed a violent act and could never emerge from the penitentiary system. Now, to be sure, there are, you have the age of Miller, you have the fact that he was an accomplice and not a principal. But certainly some of the rationale in Miller can be transferred to our analysis in this case. Some, yes, Your Honor. But I think the key factors here are we're not talking about a defendant who has led a life free of crime. Yes, there's been no violent convictions. But this is an individual who has committed two very serious narcotics offenses, who has been sentenced to prison twice. And neither of those instances has resulted in any kind of rehabilitative change. The first time he was sentenced for the Class X felony, he was sentenced to 12 years in the Illinois Department of Corrections. Shortly after he's released, he commits yet another narcotics offense, a very serious one, where he's then pleads guilty in federal court in exchange for a seven-and-a-half-year sentence. And then shortly after he's released from federal prison is when he commits the incident offense here. The legislature has recognized that these are, as counsel said, super Class X offenses. These are serious offenses. The scourge of drugs in our society and people like the defendant here who is a high-level dealer pose a significant threat. And so with no showing of rehabilitative potential, an older individual who certainly should know better, given every opportunity in the past, I don't see how this could be considered disproportionate in the same way that the Leon Miller scenario was. It's a heck of a trial tax, though, isn't it? No, Your Honor. He's not being punished for going to trial. As we make clear in our brief, it was very clear before trial what his opportunities were. It was entirely a choice of his to go to trial, knowing what the risk was going to be. I'm not going to deny that we made a very generous offer prior to trial, much like we did with the co-defendant. And yet that was the choice, a full, voluntary choice on his part. After meeting repeatedly with his counsel, he made the decision. I can't call that a trial tax for punishing him. Even the judge expressed some reluctance as to what the sentence was going to be. But, again, that's a policy question for the legislature in this case with the three classes. Unless there's a constitutional impact. Unless there's a constitutional violation, I would say, Your Honor. But, again, that proportionality level is an extraordinarily high level. It has to shock the conscience. And to shock the conscience when we talk about people, we're not talking about an individual who's on the street selling dying bags of cocaine. We're talking about an individual who's transferring kilos of heroin and cocaine, who's placing those into the system, endangering other people in our society. And so I don't believe that would ever be viewed as shocking the conscience, especially in light of Harmelin, where we're talking about a lower amount of cannabis by a first offender, not shocking the conscience at a national level. But, once again, that calls into question whether our own constitution in Illinois and its provision is, as some have contended, reaches a broader outcome than the Eighth Amendment does. Because you're really comparing that with the concept that it's really the same as the Eighth Amendment. And I understand that's your position. Right. Well, certainly the shocks the conscience test that the Illinois Supreme Court has applied in both Miller and Taylor and other cases is identical to the shocks the conscience test under the Eighth Amendment. There's been no indication that they've ever viewed it separately. In fact, prior to Clemens, I don't believe the court ever even indicated that the proportion of penalty clause had a significantly different application than the Eighth Amendment. It was just in Clemens. Because it's recent. We don't need to worry about it. No, no. The context of Clemens, if you may remember, the Clemens involved the Illinois Attorney General asserting that the prior decision in Housetrail was wrong because it wasn't consistent with the Eighth Amendment. And what the Illinois Supreme Court said, no, no, no, no. Our proportion of penalty clause and the limitations that it places upon the legislature are not synonymous with the Eighth Amendment. And so that was the context in which they made that statement. But they never once said that it is a broader application or provides a greater remedy of relief for individuals. Just take a look at the issue of rehabilitative potential. That really isn't addressed in the Eighth Amendment, but it certainly is in Illinois. Yes. And as the Illinois Supreme Court has said oftentimes in response to mandamus cases coming out of 26th Street, many of them involving Judge Strayhorn, when he would frequently say we don't provide rehabilitative services so I can't consider rehabilitative potential, the Illinois Supreme Court has said repeatedly that the legislature factors in rehabilitative potential when it sets the ranges. Those ranges are binding on the judges as appropriate in a mandamus case. And then where appropriate, when the discretion lies, the rehabilitative potential should be applied. But the court has also recognized, say in Taylor and other cases, that sometimes the offenses or the defendant's background are so serious that there is no rehabilitative potential to recognize. Anywhere in a nonviolent crime in Illinois where we've said that? Your Honor, I'm not going to dispute what counsel says, that they are very unusual to have a natural life sentence in a nonviolent crime. But the fact that they're unusual in that regard doesn't mean that it's unconstitutional. Because, again, we're talking about a defendant with a lifetime history of crime with multiple Class X felonies of narcotics. This defendant has shown no other indication of rehabilitative potential. And so, therefore, just because it's not something that is frequent doesn't mean that it's unconstitutional. And if there's no further questions, we ask this Court to affirm the defendant's sentence, affirm his conviction. Thank you very much. Thank you, Your Honor. Going to the proportionality argument, Your Honor, I think it's clear that Illinois goes further than the Eighth Amendment because I don't think Harmelin would have led to Miller in this Court. Harmelin was a guy with just some drugs. They said a life sentence is fine. Miller's involved in the murder, but our Supreme Court said, no, that's not okay. But there were distinctions. In Miller, you have not only his age, but also the fact that he wasn't the principal. Absolutely, Your Honor. There are distinctions. But I do think Plemons also shows that our Constitution goes further. The point about the trial text, it is a trial text. You know, in the State's brief, it says it gave him this offer because, not that this is illegitimate, but they gave him this offer. I think that a trial text, respectfully, Mr. Cassidy, is where someone is eligible under a certain range and he's given an offer prior to it, and then, within the same range, he gets sentenced to a hire. Here, the State is saying to him, we will come off what is mandatory if you accept this. Even if you were to assume that the former situation wasn't impermissible trial text, that's not what we have here. We have a situation where the State, in a sense, gratuitously, came off what would be mandatory in exchange for a plea of guilty, which was not forthcoming. And so they said, well, you know, then what basis would they have, even legally, to say we're going to waive the provisions of what the, after a finding of guilty, we're going to waive the provisions that the legislature has put forward? You have a completely different situation. I retract the trial text, Your Honor. I apologize. I think I was the guy who brought it up. Yeah. That's just me having a conversation with you down the road. My point was when they were trying to protect their informant, or excuse me, their officer, of course, that's legitimate. Sure. But look at the disproportionality between the 12 years, they offered 25 to 50 percent, 12, to natural life. You're absolutely correct, Your Honor. It's not a tax, but it's a disproportionality. It does bring us back, though, to whether he was eligible for this in the first place. One thing I missed from the State is they said you weren't bound by de compte. That, I don't know, to me, that's a huge red flag. And I didn't hear them say that you wouldn't be violating the Sixth Amendment if you interpret it their way. I think that silence speaks volumes. And then the one final point about going back to proportionality again is this was not a violent offense. Does it shock the conscience that that's for this Court to decide, but there's been no violence in this defendant's past? And I think our brief points out, and I think we agree, it's so rare to impose the ultimate punishment now in Illinois, the natural life, for no violence. I would be happy to answer any more questions if you're fortunate. And, Your Honor, we'd ask that you vacate his natural life sentence for a term of years. Thank you. Thank you very much. This case will be taken on advisement, and the decision will be issued in due course. Thank you to both sides for a well-presented argument.